# ECF CASE

DOUGLAS R. DOLLINGER, ESQ. (Pro Se)
204 Main Street
Goshen, New York 10924
(845) 294-2771
State Bar: 2354926

MAR    2005

05 CIV. 3097

## UNITED STATES DISTRICT COURT
## IN AND FOR THE
## SOUTHERN DISTRICT OF NEW YORK

ROBINSON

| | | |
|---|---|---|
| DOUGLAS R. DOLLINGER, Individually And As Escrow Agent On Behalf Of Certain Intended Beneficiaries, | ) ) ) | No. CIV- 05 |
| Plaintiffs, | ) | **VERIFIED** |
| -against- | ) ) | **COMPLAINT** |
| | ) ) | |
| JOSEPH R. CELLURA a/k/a JOSEPH R. SMITH, BEN-ZVI & BECK, LLP, PAUL A. BECK, HENRY BEN-ZVI, JOHN DOE (1-10) JANE ROE (1-10) and PARK FINANCIAL GROUP, | ) ) ) ) | ***TRIAL BY JURY DEMANDED*** |
| Defendants. | ) | |

## *I*

## ***PRELIMINARY STATEMENT***

### * * *

1.     This action is brought by Plaintiff DOUGLAS R. DOLLINGER ("DOLLINGER"), individually and as attorney escrow agent pursuant to the provisions of a written contract.  Plaintiff DOLLINGER contends Defendants' actions involve a conspiracy to retaliate against him by intentionally interfering in his individual ownership rights to securities and in his capacity as escrow agent by

1

Defendants invading his account and his attorney's escrow account and unlawfully removing the securities.

2.    It is alleged that Plaintiff is the victim of a systematic and illegal scheme to defraud him of his property and the property held for the benefit of others. Defendants herein conspired via an association in fact, working through an elaborate scheme of deceit and intimidation committing numerous crimes and offenses against Plaintiff DOLLINGER the ultimate purpose and result of which was the theft of the securities from the Plaintiff's escrow through a scheme designed to lauder money-securities and affecting interstate commerce.

3.    Part of the Plan was/is to steal the securities via inside information and through false statements made to others so as to take control of the securities.

4.    The fraud and embezzlement culminated in October 2003, when the Defendants took control of 184,277,000 shares (hereafter the "Securities") of Common Stock that had been deposited to DOLLINGER's attorney escrow trading account for the exclusive payment of the debts, inclusive of past employees wages, past insurance benefit/death payments, payment of accountants-auditors fees, legal fees, notes payable and other debts properly reserved for payment in liquidation of said Securities including DOLLINGER's vested fees, salaries and wages.

5.    The action also includes claims against some or all of the defendants for monetary and other appropriate relief including injunctive and declaratory relief, brought pursuant to §§ 12(1), 12(2) and 15 of the Securities Act, of 1933, 15 U.S.C. §§ 77l(1), 77l(2), and 77(o); §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a); and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC") and the Sarbanes-Oxley Act of 2002. Defendants utilized the United States mails and the wires in violation of 18 U.S.C. §§ 1341 and 1343.

6.    This Court has personal jurisdiction over all Defendants in that each Defendant, by their willful conduct as conspirator and/or co-conspirator, agent, employee and/or associate-partner, participated in the knowingly false, intentional and unlawful activities, and/or conduct as described in this Complaint while located in the district of this Court.

## II
## *JURISDICTION AND VENUE*
\* \* \*

7.    Jurisdiction of this Court is founded on 28 U.S.C. §1331 in that the Complaint arises under the laws of the United States.  Venue is proper pursuant to 28 U.S.C. §1391(b) and principles of supplemental jurisdiction, 28 U.S.C. §1367 because most or substantially all of the acts charged herein occurred in this district.

Complaint: Dollinger v. Cellura and Beck , et al.

8.    In connection with the acts and course of conduct alleged in this Complaint, the Defendants, directly and indirectly used the means and instrumentalities of interstate commerce, including the United States Mails, interstate telephone, and facsimile wire communications and internet communication for electronic filing with Federal Regulators to further their wrongful acts.

9.    This Court has pendant jurisdiction over those claims as asserted herein that arise under the laws of the States of California, Florida, and New York.

10.    This Court has personal jurisdiction over all Defendants in that each Defendant by his, her, or in their conduct as agent, servant, employee and/or partner, participated in the wrongful conduct as described in this Complaint.

## III
## THE PARTIES
*    *    *

11.    At all times hereinafter mentioned, unless otherwise stated, DOUGLAS R. DOLLINGER, ESQ., was/is an attorney duly admitted to practice of law in the State of New York and from time-to-time other jurisdictions and asserts the claims made herein individually and as escrow agent on behalf of certain intended beneficiaries.

12.    At all times hereinafter mentioned, unless otherwise stated, Defendant JOSEPH R. CELLURA is residing at 17820 Castellammare, Pacific Palisades, California and was and is acting as a co-conspirator, or was otherwise acting in furtherance to defraud Plaintiffs of their property-securities and is jointly and severally liable to Plaintiffs..

13.    During all material times set forth hereunder, Defendant BEN-ZVI & BECK, LLP, ("BEN-ZVI & BECK") was and is a California professional corporation, doing business under the name of BEN-ZVI & BECK, LLP, with offices located at 611 West Sixth Street, Suite 2620, Los Angeles, California and was and is acting as a co-conspirator, or was otherwise acting in furtherance to defraud Plaintiffs of their property-securities and is jointly and severally liable to Plaintiffs.

14.    At all times hereinafter mentioned, the Defendant, PAUL A. BECK[1], ("BECK") was and is a councilor at law conducting business in the offices of BEN-ZVI AND BECK at 611 W. Sixth Street, Los Angeles, California and was and is acting as a co-conspirator, or was otherwise acting in furtherance to defraud Plaintiffs of their property-securities and is jointly and severally liable to Plaintiffs.

15.    At all times hereinafter mentioned, the Defendant, HENRY BEN-ZVI, ("BEN-ZVI") was and is a councilor-at-law conducting business in the offices of

5

BEN-ZVI AND BECK at 611 W. Sixth Street, Los Angeles, California and was and is acting as a co-conspirator, or was otherwise acting in furtherance to defraud Plaintiffs of their property-securities and is jointly and severally liable to Plaintiffs.

16.   At all times relevant hereto, JOHN DOES (1-10) Defendants ("DOES"), whose real name is unknown at this time, was and is an agent, servant, and/or employee of and was and is acting as a co-conspirator, or was otherwise acting in furtherance to defraud Plaintiffs of their property-securities and is jointly and severally liable to Plaintiffs.

17.   At all times relevant hereto, JANE DOES (1-10) Defendants ("DOES"), whose real name is unknown at this time, was and is an agent, servant, and/or employee and was and is acting as a co-conspirator, or was otherwise acting in furtherance to defraud Plaintiffs of their property-securities and is jointly and severally liable to Plaintiffs.

18.   During all material times set forth hereunder, Defendant PARK FINANCIAL GROUP ("PARK") was and is a Florida corporation, doing business with offices located at 174 West Comstock Avenue, Winter Park Florida 32789.

---

[1] The acts of BECK are intended to include the Firm of BEN-ZVI &BECK, LLP and HENRY BEN-ZVI jointly and severally.

6

Complaint: Dollinger v. Cellura and Beck , et al.

# *V*

## *FACTUAL BACKGROUND*

### *November 2001*

19.    That on or about November 14, 2001, ORBIT and ORBIT INC. by CELLURA on behalf of ORBITTRAVEL.COM a Delaware Corporation and ORBIT INC. a wholly owned subsidiary corporation (hereafter collectively "ORBIT") entered into a written Retainer Agreement with Plaintiff DOLLINGER for the civil prosecution of claims by ORBIT and involving various individual and corporate defendants.

20.    That at all time hereinafter mentioned, pursuant to the terms of the Retainer Agreement, DOLLINGER proceeded to prosecute a lawsuit on behalf of ORBIT against, Teakwood Ventures, LLC., Aditha Reksono, Dillip Massand, Cambridge Management Systems, Global Systems Consulting, Ltd., The Europe Corporation, AsiaGateway.com, Ltd., Lilijanti Sudarto, Ina Indrawati, (hereafter collectively the TEAKWOOD Defendants); in the Federal District Court for the Southern District of New York, enumerated as Case No. 01CV 10077 (the "Civil Action"), which set forth certain claims as against Defendants, including: (1) breach of contract; (2) Tortuous interference with contract; (3) fraud; (4) misrepresentation; (5) violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18

7

U.S.C. §1961, et seq.; and (6) violations of §12(1) of the Securities Act of 1933, 15 U.S.C. §771(1).

21. That the action was brought for and on behalf of ORBIT's shareholders-investors, debt and note holders and specifically for the payment of past wages insurance/death benefits and other employee benefits and professional services wherein the losses to each was caused by the misconduct of the TEAKWOOD Defendants.

22. That on or about December 2, 2001, the action was settled in writing with an effective date of October 14, 2001, wherein : "simultaneous with the signing of [the] agreement, (hereafter the "Settlement Agreement") [Defendants] forever and irrevocably appoint[ed] DOUGLAS R. DOLLINGER, ESQ., as escrow agent providing a non-revocable stock transfer power for payment to escrow for the benefit of Plaintiffs' or its assignees from the sale or transfer of the subject securities from which said sale Defendants  *  *  * authorize the payment and delivery of the gross proceeds of said sale to plaintiffs, which said sum shall not {have been] less that .0075 cent per share.  Defendants by said appointment and signing * * * deliver to their designated agent, any and all common stock, preferred stock, and other securities ever issued by the Plaintiffs to the Defendants, or otherwise acquired by the Defendants from the Plaintiffs, including (but not limited to) One Hundred Eighty

Four Million Two Hundred Seventy Seven Thousand (184,277,000) common shares of OrbitTravel.com Corporation Defendants [execute[d], provide[d] and delivere[d] to Plaintiffs escrow agent a certificate or certificates representing the Plaintiffs' Stock, in genuine and unaltered form, duly endorsed in blank or accompanied by duly executed stock powers endorsed in blank, with requisite stock transfer stamps, if any, attached."

23.     That at all times hereinafter mentioned, ORBIT's SEC Counsel, Richard Blumberg, Esq. ("Blumberg") approved, edited or otherwise sanctioned the terms of the Settlement Agreement obtaining approval for said Settlement Agreement from ORBIT's Board of Directors, inclusive of the terms wherein DOLLINGER was named the exclusive and irrevocable escrow agent over said Securities.

24.     That at all times hereinafter mentioned, said 184,277,000 shares of ORBIT's common stock (hereafter the Securities"), together with full stock powers were executed and delivered to the Plaintiff's escrow Blumberg for delivery to DOLLINGER as escrow for TEAKWOOD Defendants as and for liquidation and for payment of past employees wages, past insurance benefit/death payments, payment of accountants-auditors fees, legal fees, notes payable and other debts properly reserved for payment in liquidation of said Securities including DOLLINGER's fees.

25.     Thereafter, Blumberg, under the terms of the Settlement Agreement delivered said Securities to DOLLINGER together with simultaneously executed stock powers in the name of DOLLINGER so as to vote said shares and/or sell said Securities for the payment of ORBIT's debt as aforesaid.

26.     That at a time after the holding and tacking period had expired under SEC Rule 144, in or about May 2002, CELLURA as CEO of ORBIT approved and directed the removal of the restricted legends from the Securities wherein by counsel, SETH D. HEYMAN, the legends were removed.

27.     That at all time hereinafter mentioned, DOLLINGER requested SEC Form 13d from ORBIT's auditors Kingery-Crouse for preparation in the sale of said Securities wherein said Form 13d was dispatched from Kingery-Crouse to DOLLINGER via e-mail.

28.     That at all time hereinafter mentioned, DOLLINGER delivered said SEC form 13-d to ORBIT for filing via Blumberg.

29.     That in or about September 2003, DOLLINGER delivered said Securities to PARK of Winter Park Florida for deposit to DOLLINGER's attorney escrow in the names of DOLINGER and the TEAKWOOD Defendants so as to trade said Securities pursuant to the Settlement Agreement.

10

30.     That at about this time, DOLLINGER, started to receive complaints from ORBIT's auditors relative to transactions CELLURA was demanding to be booked in ORBIT's SEC reports for the years 2001-2003, wherein the auditors said the transactions were fraudulent and in contradiction with prior audited statements as filed with the SEC for those years.

31.     That in or about September 2003, DOLLINGER advised Blumberg of the circumstances and complaints by ORBIT's auditors including advising Blumberg that CELLURA was attempting to fraudulently change previous SEC filings relative to his ownership interest in ORBIT, and that he was also receiving complaints from investors/shareholders/employees, wherein CELLURA was receiving payment from investors directly to his personal bank accounts and that it was discovered that in some cases, CELLURA was causing the issuance of stock from ORBIT''s Treasury without legend and in violation of SEC Rule 144.

32.     That at or about this time DOLLINGER advised Blumberg that he had also been approached relative to certain stock transaction as claimed improper by Messrs. LaCuda, Dishner and Gallagher wherein claims were being made by them that they had paid funds directly to CELLURA's personal bank account so as to receive non-dilutive freely trading ORBIT securities from CELLURA's personally held securities.

33.     That at or about this time Blumberg advised DOLLINGER that Messrs. Lauda, Dishner and Gallagher had been issued their securities because, according to his conversations with CELLURA, the securities were to come from a former 1998 placement inasmuch as they had not previously been issued the ORBIT shares under that placement and were subscribers to the placement.

34.     Blumberg advised DOLLINGER that based entirely on statements made to him by CELLURA, Blumberg had issued a letter relative to Messrs. Lacuda and Dishner causing the illegal issuance of the shares to Messrs. Lacuda and Dishner, wherein Blumberg advised DOLLINGER he would look into the matter concerning said issuance and the issuance to other individuals as well.

35.     That after speaking with Blumberg DOLLINGER contacted Messrs. Lacuda and Dishner wherein each claimed they never subscribed to the 1998 placement, wherein DOLLINGER contacted Blumberg advising him of the same.

36.     That at or about this time DOLLINGER also advised Blumberg that he had been approached by Carol Molus with information concerning CELLURA and his associate BECK, who was acting as her attorney in a voluntary Chapter 11 bankruptcy proceeding in California, and that CELLURA, who she had given a power-of-attorney, because BECK agreed to oversee CELLURA's conduct and represent her in the bankruptcy had swindled her and her husband Michael Molus out

12

of Fifty Thousand Dollars ($50,000.00) and cost them in excess of Fifteen Million Dollars ($15,000,000.00) in the bankruptcy.

37.    That CELLURA and BECK, who Carol Molus advised DOLLINGER, had each spoken to her personally on many accessions, had lied to her, first by failing to tell her that CELLURA and BECK were associates, and second, about the contents of a written contact wherein based on the claimed contents of the contract she had agreed to provide her approval to the bankruptcy reorganization and that as it turned out the contract failed to contain the express terms BECK and CELLURA stated were contained in the contract.

38.    That on or about October 5, 2004 Blumberg advised DOLLINGER he was contacting Gorden Ewart an ORBIT Board member to authorize the formation of The OrbitTravel.com Corporation's Shareholders and Oversight Committee ("Oversight Committee") to look into the foregoing and several other claims against CELLURA and to see what action could be taken against BECK.

39.    DOLLINGER believes and is informed that at all times hereinafter mentioned, CELLURA was aware of Blumberg's intent to form the Oversight Committee and commencing on or about October 10, 2003 CELLURA, so as to take control of DOLLNGER's escrow, demanded that PARK place his name on the escrow accounts set-up by DOLLINGER for sale of the Securities claiming he had

Complaint: Dollinger v. Cellura and Beck , et al.

trading authority over the sale of said securities, wherein PARK told CELLURA he needed DOLLINGER's permission in writing.

40.    That CELLURA approached DOLLINGER and demanded to be named as "co-escrow" with trading authority and payment of 40% of money realized from the sale of said Securities, wherein DOLLINGER refused and advised CELLURA that he had spoken with Blumberg about several claims of embezzlement leveled against CELLURA and other claims made against him and his associate BECK; DOLLINGER advised CELLURA that Blumberg was convening an oversight committee to look into the claims of wrongdoing against him and BECK and that any such transaction wherein he would receive 40% of the proceeds from the sale of said securities would be a fraud against ORBIT and others; that Blumberg would not issue a legal opinion in the matter and directed DOLLINGER to refuse to comply with CELLURA's demands or otherwise issue any such legal opinion.

41.    DOLLINGER is informed and believes that at all times hereinafter mentioned, CELLURA angered over the refusal of DOLLINGER to allow accounts to be setup with escrow titling CELLURA on the accounts so as to provide trading authority to him; and upon DOLLINGER's refusal to issue his legal opinion to ORBIT's outside auditors Stark-Winters; inclusive of CELLURA's fraudulent claims that he was entitled to 40% of the TEAKWOOD recovery, and for exposing the

wrongdoings of CELLURA and CELLURA's associate BECK to Blumberg as well as to ORBIT's Oversight Committee, CELLURA in retaliation told DOLLINGER he had advised PARK that the Securities had been returned to ORBIT's Treasury and that they would no longer tradable in the market.

42.    That DOLLINGER advised CELLURA that he was taking the matter up with Blumberg and the Oversight Committee and would be seeking his suspension from in his position as CEO of ORBIT.

43.    DOLLINGER is informed and believes that at all time material hereto, CELLURA advised BECK of DOLLINGER's statements, wherein via the telephone, CELLURA, in retaliation to DOLLINGER's statements and so as to cause harm to DOLLINGER, entered into a scheme with his associate BECK and Defendants DOE-ROE, to take control of said Securities and secretly remove them from DOLLINGER's attorney escrow as placed with PARK.

44.    That in furtherance of the conspiracy and in retaliation of DOLLINGER's statements and for his performance in his acts as escrow to the TEAKWOOD Defendants and as counsel to ORBIT and in refusing to allow CELLURA to have trading authority over the accounts or issue him an opinion allowing him to take 40% of the proceed, for the sale of the Securities, and so as to insure that the escrowed Securities were never traded by DOLLINGER unless

CELLURA and BECK maintained control over said Securities in an attempt to force DOLLINGER to stop working with Blumberg to convene the Oversight Committee, CELLURA and BECK conspired to take control of said Securities.

45.    DOLLINGER is informed and believes that at the advice of BECK in furtherance of said conspiracy, on October 17, 2003, CELLURA, was to take control of DOLLINGER's escrowed Securities; and, also at the direction of BECK, while intending to mislead DOLLINGER, CELLURA advised DOLLINGER that he had spoken with Blumberg and that he understood he was not to have anything to do with DOLLINGER's escrow accounts and would no longer interfere in the sale of the Securities and was sorry for the "mix-up".

46.    DOLLINGER is informed and believes that at the direction of BECK, CELLURA, knowing that DOLLINGER would reply on the same, advised DOLLINGER, that he had written John Bryne, a principle of PARK relative to the terms of the TEAKWOOD settlement and advised Mr. Byrne of DOLLINGER's exclusive authority to trade those accounts.

47.    DOLLINGER is informed and believes that at the direction of BECK, CELLURA, again knowing that DOLLINGER would reply on the same, provided the letter via **e-mail** to DOLLINGER wherein he claimed in letter was sent to Bryne,

advising Byrne that the securities held by DOLLINGER had not been returned to ORBIT's Treasury.

48.    That on or about October 20, 2003, DOLLINGER contacted PARK relative to the status on the escrow accounts for the TEAKWOOK Defendants and discovered that despite CELLURA's representation he was again attempting take physical possession of the Securities in order to remove them form PARK.

49.    That on or about October 20, 2004 DOLLINGER attempted to contact CELLURA and Blumberg to find out what CELLURA was up to, leaving messages for each, but was not successful.

50.    DOLLINGER is informed and believes that by way of the aforesaid messages, CELLURA found out that DOLLINGER had discovered his and BECK's plan, and so as to attempt to cover the deception CELLURA with the knowledge of BECK, contacted PARK falsely claiming to have Blumberg on the telephone wherein CELLURA demanded that the shares in the possession of PARK be returned to ORBIT.

51.    At the request of DOLLINGER, Blumberg responded to PARK in writing that the shares belonged in the possession of DOLLINGER and as per the Settlement Agreement, and directed PARK to return the Securities to DOLLINGER and that CELLURA had no authority over the account.

52.    DOLLINGER is informed and believes that on or about October 21, 2003, via telephonic communications between California, Florida, and New York, at the direction of BECK and CELLURA, JANE DOE intentionally and falsely advised PARK she was calling from DOLLINGER's office, where in a third-party telephone call with CELLURA on the line JANE DOE advised PARK that she was DOLLINGER's office secretary and connected CELLURA to PARK, wherein CELLURA falsely advised PARK that he [meaning CELLURA] was DOLLINGER as confirmed by JANE DOE and that the Securities should be retuned to his "Staten Island Office", this was an address controlled by CELLURA and BECK.

53.    That as a result of the foregoing, on or about October 22, 2003, by use of the U.S. mails, and the intended illegal and fraudulent activities of the Defendants, the Securities were negligently delivered by PARK, to JANE DOE at 35 Crest Loop, Staten Island, New York 10312 wherein JANE DOE at the direction of BECK, and in furtherance of the conspiracy to control said Securities delivered the Securities to BECK in California via overnight mail.

54.    DOLLINGER is informed and believes that at all times hereinafter mentioned, BECK was aware that DOLLINGER was in possession of said Securities for the benefit of ORBIT's shareholders-investors, debt and note holders, and specifically for the payment of past wages insurance/death benefits and other

employee benefits or professional services and for the benefit of DOLLINGER wherein DOLLINGER created the escrow accounts pursuant to the laws of the State of New York and Florida under the provisions of the Settlement Agreement and wherein BECK intended to cause actual harm to DOLLINGER and the other intended third-party beneficiaries.

55.   That at all time hereinafter mentioned, DOLLINGER demanded that BECK return said Securities to him, BECK, while fully knowing that DOLLINGER would rely on the statements made by him, and while under the color of the Law Firm of BEN –ZVI and BECK, LLC, BECK, wrote DOLLINGER a letter dated November 11, 2003, advising DOLLINGER that his firm would hold the 184,277,000 shares of TEAKWOOD Securities in his escrow until adjudication of ownership could be determined.

56.   That in furtherance of the conspiracy to harm DOLLINGER, BECK intentionally in an act of fraud, and without the permission, knowledge or consent of DOLLINGER or upon a lawful order from a court of competent jurisdiction, on or about October 7, 2004, as planned and to the detriment of DOLLINGER and the other intended beneficiaries in violation and of the written promise as executed by him, did illegally deliver the 184,277,000 shares from the escrow of BEN–ZVI to CELLURA.

19

57.    That at all times BECK on October 13, 2004 at 5:32 p.m. EST, while BECK was at telephone number 213-488-0240, located in Los Angles, California, BECK had a conversation with DOLLINGER over the telephone while DOLLINGER was located in Goshen, New York at telephone (845) 294-2772, wherein despite BECK's written representation that he would hold the Securities in escrow, BECK admitted to DOLLINGER that he had given the Securities to CELLURA.

58.    That at all time hereinafter mentioned, all of the Securities were fully paid for and in excess of two (2) years old, available for trade in the market and for payment of past employees wages, past insurance/death benefit payments, payment of accountants-auditors fees, legal fees, notes payable and other debts properly reserved under the Settlement Agreement for payment in liquidation of said Securities.

59.    That by reason of the foregoing, CELLURA, BECK and DOE-ROE have damaged the Plaintiff DOLLINGER individually and in his obligation to certain third-party intended beneficiaries in the sum of Three Million Five Hundred Thousand ($3,500,000.00) Dollars, prior to trebling.

*October 2003- March 2005*

\* \* \*

60.    That at all times hereinafter mentioned, the Retainer Agreement executed by ORBIT called for DOLLINGER to receive 33.33% of the settlement recovered from the TEAKWOOD Defendants, whether recovery was by suit or settlement and in either cash or securities.

61.    That at all times hereinafter mentioned, CELLURA and BECK were aware of the written Retainer Agreement between ORBIT and DOLLINGER and that the retainer called for DOLLINGER to receive 33.33% of any settlement recovered from TEAKWOOD whether by suit or settlement and in either securities or cash.

62.    That at all times hereinafter mentioned, DOLLINGER recovered 184,277,000 shares of ORBIT securities from TEAKWOOD and was in actual possession of the aforesaid Securities and was the actual owner of 61,425,666 shares of ORBIT constituting 33.33% of the TEAKWOOD Securities.

63.    That at all time hereinafter mentioned, CELLURA and BECK, as intended seized the Securities owned by DOLLINGER so as to illegally dilute the interest of DOLLINGER wherein the value of said Securities has reached in excess of One Million Two Hundred Fifty Thousand ($1,250,000.00) Dollars in the market prior to trebling.

Complaint: Dollinger  v. Cellura and Beck . et al.

64. That the foregoing acts were retaliatory by BECK and CELLURA as against DOLLINGER individually.

**Acts Involving Interstate Use Of The Mails And Electronic Communications Designed To Illegally Seize Freely Trading Securities So As To Control The Market Float And Injure Plaintiff- DOLLINGER**

65. That at all times hereinafter mentioned, DOLLINGER maintained certain brokerage accounts with licensed New York Broker-Dealers including the Joseph Steven Group and Clayton Dunning, wherein in addition to the aforesaid TEAKWOOD Securities, DOLLINGER maintained in excess of 3,800,000 shares of ORBIT's common stock issued to him in excess of two (2) years prior, wherein ORBIT authorized the removal of restrictive legends, and were available in the open market for free trade.

66. In furtherance of the intentional acts of the Defendants, commencing on or about June 25, 2004, and continuing to date CELLURA, BECK, JOHN DOE and JANE DOE in additional acts of retaliation designed to further ensure that the money-securities seized by the Defendants from the Plaintiff DOLLINGER, and in further retaliation for his refusal to allow the illegal activities of BECK and CELLURA, and so as to see that DOLLINGER, would sustain individual damages, the Defendants, CELLURA, BECK, JOHN DOE and JANE DOE via the United

States Mails, telephone and other electronic communication called numerous stock brokerage houses including Clayton Dunning and Joseph Steven and other trading institutions such as Pershing Clearing House wherein all of the Defendants falsely advised said firms that the securities lawfully belonging to DOLLINGER, and in excess of the aforesaid TEAKWOOD Securities were stolen and were otherwise illegally issued to the aforesaid shareholders and were not to be traded in the market.

67.   DOLLINGER is informed and believes that at the direction of CELLURA Defendant BECK has held himself out as an attorney for ORBIT in multiple jurisdictions including California, New Jersey, and New York and Texas, while he knew the facts to be untrue and/or while concealing facts that would have made his statements untrue and intentionally caused the seizure of Dollinger's securities.

68.   DOLLINGER is informed and believes that CELLURA instructed and BECK has falsely and illegally advised said entities including Clayton Dunning and Joseph Steven and other trading institutions such as Pershing Clearing House that as corporate attorney on behalf of ORBIT he has investigated the matter and has determined that said securities are stolen or were otherwise illegally issued.

69.   DOLLINGER is informed and believes that at all times the Defendants CELLURA, BECK, JOHN DOE and JANE DOE knew and were aware that the

Complaint: Dollinger  v. Cellura and Beck , et al.

statements were false when made and that the intent of the Defendants was to cause third parties to rely on said statements so as to injure Plaintiff in his property in retaliation for DOLLINGER's attempt to expose CELLURA's and BECK's multiple acts of wrongdoing.

70.     That at all times hereinafter mentioned, as a direct and proximate result of said statements Plaintiff DOLLINGER was damaged in his property and the loss of the sale of his ORBIT securities in the open market.

71.     That foregoing statements were retaliatory as made by CELLURA, BECK, JOHN DOE and JANE ROE and the accompanying conduct was in violation of the 1933 Securities Act.

72.     That by reason of the forgoing, Plaintiff DOLLINGER has sustained injury directed against him personally in retaliation of the disclosure of the illegalities of each of the individual acts of the Defendant, BECK and CELLURA as aforesaid.

73.     That at all time hereinafter mentioned, CELLURA and BECK, JOHN DOE and JANE ROE, as intended, seized the securities owned by DOLLINGER so as to illegally dilute the interest of DOLLINGER wherein the value of said Securities has reached in excess of One Hundred Thousand ($100,000.00) Dollars in the market prior to trebling.

### CAUSES OF ACTION

### COUNT I

### TORTIOUS INTERFERENCE WITH CONTRACT
*   *   *
**(CELLURA and BECK, JOHN DOE and JANE ROE)**

74.   Plaintiff repeats and realleges each and every allegation set forth in paragraphs numbered "1" through "73", with the same force and effect as though set forth in full herein.

75.   Prior to the taking of the Securities, Defendants were each made fully aware of the existence of the contractual relationships between DOLLINGER and among ORBIT, the TEAKWOOD Defendants, PARK and Joseph Stevens/Clayton Dunning.

76.   Defendants were each fully aware of the nature and extent of the benefits to DOLLINGER under the aforementioned contractual agreements, and, further, Defendants were fully aware of the consequences to DOLLINGER in their actions taken, as well as the potential loss and real loss to him in the sale of both the recovered Securities and those deposited in his Joseph Stevens/Clayton Dunning accounts.

77.   Despite said knowledge Defendants as aforesaid and because of the Defendants' actual knowledge of the aforementioned contractual relationships, by

Complaint: Dollinger v. Cellura and Beck , et al.